Dortch-Okara, Barbara A., J.
By this action, the plaintiffs seek to retain possession of their residence which has been sold at auction as a result of the foreclosure of the mortgage held by the defendant OneWest Bank, FSB (“OneWest”). Now before the court is OneWest’s motion pursuant to Mass.R.Civ.P. 12(b)(6) to dismiss counts one, two, three, six, and *407 seven of the plaintiffs’ complaint for failure to state a claim upon which relief can be granted.
After hearing, and having reviewed and considered the arguments, memoranda and pleadings, the motion is ALLOWED.
BACKGROUND
The plaintiffs are the former owners and current occupants of the real property located at 24 Glen Lane, Randolph, Massachusetts. Plaintiffs purchased the property on October 26, 2007, subject to a mortgage (“Mortgage”) in the amount of $285,000 executed in favor of Mortgage Electronic Registration Systems, Inc. (“MERS”) as nominee for Indymac Bank, F.S.B. (“Indymac”) and registered in Norfolk County Land Court. The Mortgage was assigned from MERS to OneWest via an Assignment of Mortgage dated August 28, 2009.
As a result of financial hardship brought on by a job loss, the plaintiffs became delinquent on their Mortgage payments. Plaintiffs attempted to modify their loan obligation through a forbearance program and through the federal government’s Home Affordable Mortgage Modification Program (“HAMP”). The loan modification, however, was not granted, and on May 18, 2010, OneWest invoked the Statutory Power of Sale pursuant to the Mortgage. On June 3, 2010, title to the property was transferred to Federal National Mortgage Association (“Fannie Mae”).
DISCUSSION
In count one of the complaint, the plaintiffs assert that defendant breached its contract with the plaintiffs by delaying and ultimately neglecting to process plaintiffs’ HAMP loan modification application. Essentially, plaintiffs make two arguments: (1) plaintiffs and defendant entered into an oral agreement wherein plaintiffs agreed to submit loan application materials and defendant agreed to consider them for a loan modification and not to foreclose on the Mortgage while it considered them for a loan modification; and (2) defendant was party to a HAMP contract with Fannie Mae in which it agreed to review all eligible borrowers for loan modification and to grant loan modifications to qualified borrowers in compliance with that contract. Plaintiffs profess to be third-party beneficiaries of that contract.
As to the first argument, it does not appear in the record, and plaintiffs do not assert, that the terms of the Mortgage included a provision for loan modification. Therefore, plaintiffs had no existing contractual right to a loan modification. Federal Nat. Home Mortgage Assocs. v. Tong, 60 Mass.App.Ct. 1105, 2003 WL 22881029 (2003). To the extent that plaintiffs are arguing that a new oral contract was formed between the parties, their argument fails. In order to show a breach of contract, a plaintiff must demonstrate that the parties had a contract supported by valid consideration that the defendant breached, causing damage to the plaintiff. City of Revere v. Boston/Logan Airport Assoc., LLC., 443 F.Sup.2d 121, 126 (D.Mass. 2006). At most, the plaintiffs allege that the defendant implicitly agreed to consider plaintiffs for a loan modification. “[To] create an enforceable contract, there must be an agreement between the parties on the material terms of the contract, and the parties must have a present intention to be bound by that agreement.” Situation Mgmt. Sys. v Malouf, Inc., 430 Mass. 875, 878 (2000). It is clear that, at most, this was an “agreement to agree” that did not rise to the level of an enforceable contractual obligation and was merely a negotiation with the plaintiffs. Tong, 60 Mass.App.Ct. 1105.
Even if plaintiffs had shown that there was an agreement, they have failed to allege any consideration for this contract, a necessary element of any contract claim. Singarella v. City of Boston, 342 Mass. 385, 387 (1961). No consideration arises from the fact that the plaintiffs complied with the loan modification application process. And, to the extent that they argue they continued to make payments on their mortgage during the loan modification process, they were under a preexisting duty to do so. It is a “well-settled rule . . . that performance of a pre-existing legal duty that is neither doubtful nor subject to honest and reasonable dispute is not valid consideration where the duty is owed to the promisor." In re Loyd, Carr & Co., 617 F.2d 882, 890 (1st Cir. 1980) (applying Massachusetts law). Therefore, the plaintiffs have failed to state a claim for breach of contract with respect to any promises the defendant may have made regarding loan modification.
As to the second argument, HAMP does not provide a basis for a third-party beneficiaiy contract action. See McKensi v. Bank of America, N.A., 2010 WL 3781841, *5-6 (D.Mass. 2010). Plaintiffs fail to cite any case law allowing borrowers to sue their mortgagee under HAMP based on a third-party beneficiary theory. The case cited by plaintiffs, Williams v. Geithner, 2009 WL 3757380 (D.Minn. Nov. 9, 2009), does not support the proposition that HAMP creates a property interest. In fact, the case unequivocally holds that “[HAMP] did not intend to create a property interest in loan modifications for mortgages in default. . . [T]he statute does not create an absolute duty on the part of the Secretary to consent to loan modifications; it is not ‘language of an unmistakably mandatory character.’ ” Williams, 2009 WL 3757380 at *6. Furthermore, the statute itself dictates that requests for loan modifications are contingent upon the buyer both meeting the minimum eligibility requirements and obtaining a positive net present value (NPV) result. “Thus loan modifications are not an entitlement, but are linked to decisions that result in profits to the taxpayers. Congress did not intend to mandate loan modifications.” Id. The proper avenue for redress for violations of HAMP is through Freddie Mac, which serves as compliance officer for HAMP. U.S. Dep’t of Treasury, Sup *408 plemental Directive 2009-08, at 4 (Nov. 3, 2009). Therefore, plaintiffs have failed to state a cognizable breach of contract claim based on defendant’s HAMP contract with Fannie Mae.
In count two, plaintiffs allege that defendant breached the implied covenant of good faith and fair dealing by failing to process their application for a loan modification and by failing to suspend the foreclosure during the HAMP process. The implied covenant of good faith and fair dealing simply obligates each party of a contract not to act in such a way as to impair the other party’s right to reap the fruits of the contract. Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-72 (1991). A claim for breach of the covenant of good faith and fair dealing is dependent upon the existence of an enforceable contract between the parties. As previously stated, the parties did not enter into a valid contract. Thus, defendant could not have breached the implied covenant. See Speleos v. BAC Home Loans Serv., L.P., 2010 WL 5174510, *7 (D.Mass. 2010).
In count three, the plaintiffs allege that the defendant defrauded the plaintiffs by proffering a loan modification in an effort to prevent the plaintiffs from filing for bankruptcy protection and to profit from government funds paid as part of the HAMP program. Under Mass.R.Civ.P. 9(b), averments of fraud must be stated with particularity. At a minimum, the plaintiff needs to identify the person making the representation, the contents of the representation, and where and when such representation took place. See Equipment Sys. for Indus., Inc. v. Northmeadows Const. Co., Inc., 59 Mass.App.Ct. 931, 931-32 (2003). In this case, plaintiffs have not stated the name of the person who made representations to the plaintiffs, what those representations consisted of, or where and when those representations took place. Neither have they attached any correspondence to this effect. Therefore, plaintiffs have failed to state a claim for fraud.
In count six, the plaintiffs allege that they were harmed by the defendant’s intentional infliction of severe emotional distress. However, plaintiffs merely recited the elements of an intentional infliction of emotional distress claim without identifying conduct on the part of the defendant that was extreme and outrageous. Howcraft v. Peabody, 51 Mass.App.Ct. 573, 596 (2001). To the extent that the plaintiffs are referring to defendant’s actions during the foreclosure and loan modification application process, they have not cited any conduct, beyond the actual process itself, that is extreme and outrageous and beyond the bounds of human decency. Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976). Such extreme conduct is exemplified in the case in which a creditor physically seized and removed half of a mobile home in the middle of winter in order to satisfy a debt. Cady v. Marcella, 49 Mass.App.Ct. 334 (2000). There are no allegations in plaintiffs’ complaint that approach this level of misconduct. Although a mortgage foreclosure is typically emotionally distressing, it is not actionable merely by virtue of the distress it causes. Thus, the claim for intentional infliction of emotional distress fails.
Counts one, two, three, six, and seven are also preempted by federal law, 12 C.F.R. §560.2, a federal regulation issued by the Office of Thrift Supervision (“OTS") under the Home Owners’ Loan Act (“HOLA”) of 1933, 12 U.S.C. §1461-1468. State law that conflicts with or frustrates the effect of federal law is preempted, U.S. Const, art. VI, cl. 2, and “federal regulations have no less pre-emptive effect than federal statutes.” Fidelity Fed. Sav. & Loan Ass’n. v. de la Cuesta, 458 U.S. 141, 153 (1982).
The intent of OTS is “[to] occupy the entire field of lending regulation for [FSAs].” §560.2(a). Paragraph (a) of §560.2 states that “[FSAs] may extend credit . . . without regard to state laws purporting to regulate or otherwise affect their credit activities.” Id. Paragraph (b) of §560.2 states the types of state laws preempted by paragraph (a), including terms of credit and the processing, origination, or servicing of mortgages. §560.2(b). Paragraph (c) provides the exception, sheltering from the regulation’s preemptive scope state contract, commercial, real property, homestead, tort, and criminal law, “to the extent that they only incidentally affect the lending operations of [FSAs] or are otherwise consistent with the purposes of paragraph (a).” §560.2(c).
Interpretative guidelines issued by OTS specify that the first step when analyzing federal preemption under §560.2 is to determine whether the type of law in question is listed in paragraph (b). 61 Fed.Reg. 50951-01 (Sept. 30, 1996). If so, the law is preempted. Id. If not, the next question is whether the law affects lending. Id. If it does, then the presumption arises that the law is preempted. Id. This presumption is overcome only by showing that the law fits within an exception listed in paragraph (c). Id. A state law that on its face is not one described in §560.2(b) may nevertheless be preempted if, as applied, it fits within §560.2(b). See Casey v. Fed. Deposit Insur. Corp., 583 F.3d 586, 593-94 (8th Cir. 2009) (describing circuit case law and OTS advisory opinions imposing preemption where state law, as applied, met the requirements in §560.2(b)).
The state laws at issue here do not, on their face, fit any of the examples listed in §560.2(b). The claims are alleged in terms of state contract law and tort law, which are among the exceptions listed in §560.2(c). Nevertheless, on closer scrutiny, it is evident that these claims fall within the type of state law claims that are preempted by federal law. Plaintiffs’ state law claims derive from the defendant’s servicing of plaintiffs’ mortgage loan and their request to modify the terms of the mortgage loan under HAMP. The OTS has unequivocally stated that federal law occupies the *409 field as to mortgage servicing and the terms of credit offered by a federally chartered savings bank. See §560.2(b). The relationship between the plaintiffs’ claims and federal law is highlighted by the type of relief plaintiffs are requesting: a modification of the mortgage pursuant to the HAMP Guidelines and an order adjusting the mortgage rate to a reasonable rate or a rate determined by HAMP. Therefore, counts one, two, three, six, and seven are preempted by federal law, and must be dismissed.
ORDER
Accordingly, the motion to dismiss of the defendant, OneWest Bank, FSB is ALLOWED as to counts one, two, three, six, and seven of the plaintiffs’ complaint.